COFFIN, Circuit Judge.
This case is a sequel to and arises out of the events described in Robinson v. Watts Detective Agency, 685 F.2d 729 (1st Cir.1982). That opinion upheld a verdict of $750,000[1] for the trustee in bankruptcy of D.C. Sullivan Company (Sullivan) against, among others, a vice-president of Sullivan, one Otte, and Watts Detective Agency, Inc. (Watts), a company to which Otte and others caused Sullivan's assets to be transferred in fraud of creditors, in violation of former 11 U.S.C. § 107(d)(2)(a) (repealed 1978).
The present question is whether appellant Goldman is entitled to a five percent broker’s commission in the amount of $50,-000, by virtue of a letter agreement which stated in relevant part: “[Y]ou [Sullivan] *16 ... have agreed to pay me a broker’s commission of five percent of whatever consideration you ... receive ... in the event that a deal is consummated with my customer Consolidated Service Corp. [the parent of Watts]. * * * It goes without saying that you are at liberty to negotiate with anybody else at all times and that I will not be entitled to any broker’s commission if you sell to someone else.” The parties stipulated that the broker was engaged “to introduce the owner to a prospective buyer and then to let the owner and the prospective buyer continue on by themselves to negotiate a ‘deal’ involving the transfer of the property and the price of the same.”
The district court agreed with the bankruptcy court that no “deal was consummated”. It addressed the broker’s argument that our opinion in Robinson v. Watts repeatedly characterized the surreptitious absorption by Watts of Sullivan’s customer accounts and personnel as a “transfer” of property, i.e., as appellant would have it, a “deal”. The district court, however, deemed such terms “as used in the context of the claim of fraudulent conveyance [as] ... a traditional metaphor ... used to explain the remedy the law provides for the wrong committed to the creditors.”
We agree with the district court, for two reasons. In the first place, the precondition envisaged by the letter agreement was a “deal”. In the context of this agreement, “deal” carries its ordinary meanings of
“An act of dealing, or buying and selling; a business transaction.” (Oxford English Dictionary)
“Any agreement or business transaction ... A bargain or favorable sale.” (American Heritage Dictionary)
“An act of buying or selling ... a reciprocal arrangement or agreement.” (Webster’s Third New International Dictionary)
Specifically, the agreement contemplated negotiations between seller and buyer re-suiting in not only a transfer of property but a transfer for a price, i.e., a sale. The letter agreement itself noted that the broker would have no claim to a commission if Sullivan were to “sell to someone else”. And it was stipulated that the “deal” to be negotiated between owner and prospective buyer involved price. It is straining syntax to equate the “consummation of a deal” with a desperate, disingenuous, shifting of customer accounts for no present consideration to Watts,[2] followed by a ten year lag before a jury finally set the value of the fraudulent diminution of assets, such amount being burdened by substantial obligations to litigation counsel.
A second ground for our decision lies in the rationale of the Bankruptcy Act. It seems to us a paradox that appellant’s claimed commission of $50,000 is based on the trustee’s recovery, after trial, verdict, and compromise, plus interest (5% X $900,-000 = $45,000 plus subsequent interest). In other words, appellant would have us view the “deal” as completed when the jury, in 1982, established the value of the assets transferred to Watts in April of 1970. But this amount was not a “price” paid for property transferred; it was not the completion of a transaction. Rather, it followed the jury’s finding, under 11 U.S.C. § 107(d)(6), that the transaction was “null and void against the trustee”. 685 F.2d at 737. And the money judgment was in satisfaction of the trustee’s right, in lieu of recovering property fraudulently transferred, to “collect its value from and avoid such transfer ...”, under 11 U.S.C. § 110(e)(2). Id. at 738. We accepted in Robinson v. Watts the characterization of Elliott v. Glushon, 390 F.2d 514 (9th Cir.1967), that “The legislative theory is cancel-lation_” Id. at 738.
Accordingly, undoing a wrongful transfer of property is the very antithesis of “consummating a deal”. The case is similar to McCarthy v. Reid, 237 Mass. 371, 129 N.E. 675 (1921), in which, though a *17 broker in good faith produced a customer who agreed to exchange land with his principal, the latter refused to carry out the agreement because of the customer’s false representations of rents received. The Supreme Judicial Court reversed a judgment for the broker, reasoning that “the situation of the parties was the same as if it [the agreement] never had been made. Although the plaintiff acted in good faith and was not a party to the fraud, he is not entitled to a commission as he failed to accomplish what he was employed to do.” Id. at 372-73, 129 N.E. 675. This is the reasoning we apply to the case at bar.

Affirmed.

. To this amount was added a considerable amount of post-judgment interest accumulated over a period of some ten years. After mandate issued, the Bankruptcy Court approved a compromise for $900,000. This amount had increased to $930,000 by the time of payment because of interest having accrued in an escrow account. The cost of this litigation was estimated by the trustee at about one third of this amount.

. The apt description of the exercise was given by one of the participants, “[I]t’s a dirty way to do it, but these accounts are up for grabs." Robinson v. Watts Detective Agency, 685 F.2d 729, 733 (1st Cir.1982).